UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TERENCE D. MANNING,

    Plaintiff,

v.

STATE OF WASHINGTON; WASHINGTON STATE PATROL; Washington State Patrol Trooper John Doe Clevenger, Jane Doe Clevenger, and their marital community; and Trooper Jane DuCommon, John Doe DuCommon, and their marital community,

    Defendants.

Case No. C05-5791RJB

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. 36-1). The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

This suit stems from alleged mistreatment of plaintiff Terence D. Manning in the investigation of an alleged misdemeanor. Dkt. 1 at 3. Mr. Manning brought suit in federal court asserting claims of battery; excessive force; violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments; violation of the Washington State Constitution; and negligence. Dkt. 1.

ORDER
Page 1

On December 8, 2002, at 3:20 p.m., Michael Compton was driving west on State Route 162. Dkt. 51, Exh. B at 14. His wife, Nickie J. Compton, and nephew were passengers in the vehicle. *Id.* When Mr. Compton stopped at a yellow light, a truck that had been following very closely pulled up to the right side of the Comptons' vehicle. The driver of the truck removed a rifle from the rifle rack in his rear window and pointed the gun out of the partially opened window but not directly at the Comptons. *Id.* The truck driver yelled that Mr. Compton needed to learn how to drive and made an obscene gesture. *Id.* Ms. Compton reported the incident to the Washington State Patrol ("WSP"). *Id.* She remembered that the truck had a personalized Washington license plate reading, "NATIVE1." *Id*. She described the driver as a thin, white male in his mid-forties to fifty, with scruffy facial hair and longer dark and gray hair. Dkt. 40 at 3. Due to heavy call volumes, Ms. Compton's call was held over until 5:00 p.m. when it was brought to the attention of WSP Trooper Douglas J. Clevenger *Id.* Trooper Clevenger determined that Mr. Manning was the only registered owner of the license plate "NATIVE1." *Id* at 15. WSP Troopers Serena Ducommon and Clevenger went to Mr. Manning's residence to investigate the incident. Trooper Clevenger observed someone matching the description of Mr. Manning enter the residence. *Id.*

Trooper Clevenger went to the residence Mr. Manning entered. He observed a hatchet resting near the doorway. *Id.* Trooper Clevenger knocked on the door, and Lisa G. Long answered and said that Mr. Manning was not home and that she had not seen him since he left for a hunting trip the day before. *Id.* Trooper Clevenger told Ms. Long that he had seen Mr. Manning enter the residence. *Id.* Ms. Long then called for Mr. Manning, who came to the door. *Id.*

The troopers began questioning Mr. Manning about the incident. The troopers told Mr. Manning that his vehicle was reportedly involved in a serious incident. Dkt. 50 at 6-7. Mr. Manning contends that the troopers offered no further details. *Id.* Trooper Clevenger contends that Mr. Manning was informed that the incident involved brandishing a weapon. Dkt. 40 at 4.

ORDER
Page 2

On multiple occasions, Mr. Manning said that he thought he needed to talk to his attorney. Dkt. 50 at 9. Mr. Manning told the troopers that he had been deer hunting that day. Dkt. 50 at 8.

Mr. Manning raised his left hand to shoulder level, extended it towards Trooper Clevenger, and cocked his wrist back. Dkt. 40 at 4. This suggested to Trooper Clevenger that Mr. Manning was done talking and wanted the troopers to leave. *Id.* at 4-5. Because Mr. Manning's hand "broke the plane of the doorway," Trooper Clevenger decided to arrest Mr. Manning. *Id.* at 5.

The parties' accounts of the arrest differ. According to Mr. Manning, the following events transpired: Trooper Clevenger asked Mr. Manning to step outside, and Mr. Manning refused because he was not dressed to go outside in light of the cold weather. Dkt. 50 at 6. Trooper Clevenger held Mr. Manning's left arm and attempted to remove him from the residence. Dkt. 50 at 9. Mr. Manning braced himself against the doorjamb. Dkt. 50 at 10. Trooper Clevenger entered the residence and released Mr. Manning. Dkt. 50 at 10. Mr. Manning withdrew and requested that the troopers leave the premises. Dkt. 50 at 10. Trooper Ducommon took hold of Mr. Manning's throat, told Mr. Manning that she would mace him if he did not submit to being handcuffed, and pounded his head into the marble flooring. Dkt. 50 at 12. Mr. Manning begged for the troopers to stop and told them that he had a preexisting brain injury. Dkt. 50 at 12. Mr. Manning was placed in handcuffs but not informed that he was under arrest. Dkt. 50 at 12.

According to Troopers Clevenger and Ducommon, the following events transpired: Trooper Clevenger informed Mr. Manning that he was under arrest when he took hold of Mr. Manning's left arm at the doorway. Dkt. 40 at 5. Mr. Manning resisted arrest and was told not to resist. Dkt. 40 at 5-6. Trooper Clevenger used a pain compliance restraint on Mr. Manning's left wrist but Mr. Manning did not comply. Dkt. 40 at 5. Trooper Ducommon held Mr. Manning's shoulders with her knee. Dkt. 40 at 5; Dkt. 39 at 4; *see also* Dkt. 50 at 12. Trooper Clevenger told Mr. Manning to volunteer his right hand and that if he refused to do so, he would be struck. Dkt. 40 at 5-6. Trooper Clevenger struck Mr. Manning's leg with his club. Dkt. 40 at 6; *see also* Dkt. 50 at 12.

ORDER
Page 3

1    Mr. Manning appeared at the jail bleeding from his neck. Dkt. 50 at 13. Jail staff refused to
2    book Mr. Manning because he was injured. Mr. Manning was transported to Tacoma General
3    Hospital and treated.  The emergency room physician who treated Mr. Manning stated in his
4    deposition that Mr. Manning's subjective complaints were out of proportion to objective signs of
5    injury. Dkt. 37, Exh. B at 11. A CT scan revealed no new injury and did not indicate a prior injury.
6    Dkt. 37 at 13. Mr. Manning was diagnosed with multiple contusions and discharged. *Id.* at 14.

7    Mr. Manning was charged with resisting arrest, and the charge was apparently dismissed with
8    prejudice at some point. Dkt. 49 at 4.

## II. DISCUSSION

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must

1   consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a

2   preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*,

3   809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving

4   party only when the facts specifically attested by that party contradict facts specifically attested by

5   the moving party. The nonmoving party may not merely state that it will discredit the moving party's

6   evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec.*

7   *Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in

8   affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*,

9   497 U.S. 871, 888-89 (1990).

10  **B. DEFENDANTS SUBJECT TO SUIT UNDER 42 U.S.C. §1983**

11      The defendants maintain that the Washington State Patrol and its employees named in their

12  official capacities are not persons subject to suit under 42 U.S.C. §1983 and that the State of

13  Washington is immune from suit under the Eleventh Amendment . Dkt. 36-1 at 8-10. The plaintiffs

14  note that the troopers are also being sued in their individual capacities but apparently do not contest

15  that the WSP is not subject to suit under Section 1983. *See* Dkt. 49 at 5-6.

16      Neither states nor state officials acting in their official capacities are persons for purposes of

17  an action for damages under 42 U.S.C. §1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 48,

18  71 (1989). *See also Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613,

19  617 (2002)(citing *Will v. Michigan Dept. Of State Police, supra*). This rule applies equally to state

20  agencies. *See Kaimowitz v. Board of Trustees of the Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991);

21  *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991). Further, a defendant cannot be held liable

22  under 42 U.S.C. §1983 solely on the basis of supervisory responsibility or position. *Monell v. New*

23  *York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).

24      Under the Eleventh Amendment to the United States Constitution, states are immune from

25  suit brought by citizens in state courts absent a showing of a waiver of immunity. *Idaho v. Coeur*

26

1  *d'Alene Tribe*, 521 U.S. 261, 267 (1997). The passage of 42 U.S.C. §1983 did not abrogate state

2  immunity, and the State of Washington has not waived its immunity from suit under the Eleventh

3  Amendment. *Will*, 491 U.S. at 66; *Rains v. State*, 100 Wn.2d 660, 668 (1983).

4        Because the WSP is not a "person" within the meaning of §1983, the plaintiff has not stated a

5  cause of action for money damages under 42 U.S.C. §1983 against this defendant. To the extent that

6  Troopers Ducommon and Clevenger are sued in their official capacities, the Section 1983 claims

7  asserted against them should be dismissed. Finally, the State of Washington is immune from suit

8  under 42 U.S.C. §1983, and Section 1983 claims against the State of Washington should be

9  dismissed.

10 **C. STATUTE OF LIMITATIONS**

11       The defendants contend that Mr. Manning's claims of assault, battery, false imprisonment,

12 false arrest, and negligent infliction of emotional distress are barred by the state's two-year statute of

13 limitations. Dkt. 36-1 at 10; RCW 4.16.100. The plaintiff contends that his Section 1983 claims fall

14 within Washington's three-year statute of limitations for personal injury actions. Dkt. 49 at 7; RCW

15 4.16.080(2). The Court notes that determination of the applicable statute of limitations is problematic

16 due to the form of the complaint in this case. While the complaint ostensibly asserts two counts,

17 these "counts" contain narratives arguably invoking several causes of action. It is therefore difficult

18 to determine whether the plaintiff brings claims under Section 1983, common law tort theories, or

19 both.

20       **1. STATE CLAIMS**

21       To the extent that Mr. Manning asserts state claims of false arrest, assault, battery, and false

22 imprisonment, these claims are governed by Washington's two-year statute of limitations. *See* RCW

23 4.16.100 (assault, assault and battery, or false imprisonment); *Heckart v. City of Yakima*, 42 Wn.

24 App. 38, 39 (1985) (false arrest). Mr. Manning does not dispute that his claims accrued on

25 December 8, 2002, the date of his arrest. *See* Dkt. 49 at 8. The complaint was filed on December 7,

26

2005, outside of the two-year statute of limitations. These state claims should be dismissed.

To the extent that Mr. Manning asserts a claim for negligent infliction of emotional distress, that claim is governed by Washington's three-year statute of limitations. *See* RCW 4.16.080(2); *Gausvik v. Perez*, 392 F.3d 1006, 1009 (9th Cir. 2004). The complaint was filed within the three-year statute of limitations, and this claim is therefore timely.

**2. SECTION 1983 CLAIMS**

The defendants contend that Mr. Manning's claims arising under 42 U.S.C. §1983 are subject to Washington's two-year statute of limitations for claims of false arrest and imprisonment. Dkt. 36-1 at 11.

In deciding claims under Section 1983, federal courts borrow state statutes of limitations on a statewide basis. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 124 (2005) ("42 U.S.C. § 1988 is 'a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims.'"). The Washington statute applicable to Section 1983 claims provides for a three-year statute of limitations. *Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989) ("In 'considering § 1983 claims [we] should borrow the general or residual statute for personal injury actions.' In Washington, that would be three years."). Mr. Manning's Section 1983 claims are not barred by the statute of limitations.

**D. SECTION 1983**

Section 1983 provides for the redress of constitutional rights violations:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. §1983. Mr. Manning contends that his rights to be free from arrest absent probable cause and from excessive force were violated. Dkt. 49 at 12, 14,21.

**1. QUALIFIED IMMUNITY**

1    The defendants contend that Troopers Clevenger and Ducommon are entitled to qualified
2  immunity because their actions did not violate Mr. Manning's clearly established constitutional
3  rights. Dkt. 36-1 at 14. Mr. Manning contends that qualified immunity does not apply because the
4  troopers lacked probable cause and because the troopers failed to comply with procedures dictated
5  by statute and case law. Dkt. 49 at 6.

6    Government officials who are sued in their official capacities have qualified immunity from
7  suit absent evidence of incompetence or knowing violation of the law. *Anderson v. Creighton*, 483
8  U.S. 635, 638 (1987). This rule shields government officials from suit in order to afford relief to
9  plaintiffs without unduly hindering officials' performance of their governmental duties. *Id.* Qualified
10 immunity is not merely a defense to liability; it is an entitlement to immunity from suit in the first place.
11 *Devereaux v. Perez*, 218 F.3d 1045, 1052 (9th Cir. 2000), *reh'g en banc*, *Devereaux v. Abbey*, 263 F.3d
12 1070 (9th Cir. 2001).

13   The defense of qualified immunity has three steps. First, there must be a violation of a
14 constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). At this stage, the facts are viewed in
15 the light most favorable to the injured party. *Id.* Absent such a violation, there is no need to pursue
16 the remaining qualified immunity analysis. *Id.* Second, the right must be so clearly established that a
17 reasonable officer would be on notice of its existence and parameters. *Id.* at 199; *Romero v. Kitsap
18 County*, 931 F.2d 624, 627 (9th Cir. 1991). This burden rests with the plaintiff. *Romero*, 931 F.2d at
19 627. The plaintiff may establish that the conduct at issue was previously held unlawful or that the
20 unlawfulness is apparent. *See Anderson*, 483 U.S. at 640. Third, the officer must demonstrate that a
21 reasonable officer could have believed the conduct was lawful. *Romero*, 931 F.2d at 627. Qualified
22 immunity is "designed to spare a defendant not only of unwarranted liability, but unwarranted
23 demands customarily imposed upon those defending a long drawn-out lawsuit." *Devereaux*, 218
24 F.3d at 1052.

25   **a. Arrest**

ORDER
Page 8

The Fourth Amendment guarantees citizens the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Seizures inside a home without a warrant are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 590 (1980). Such an arrest requires both probable cause and exigent circumstances. *Id.* ("In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."); *U.S. v. Prescott*, 581 F.2d 1343, 1350 (9th Cir. 1978) ("We join the District of Columbia Circuit . . . and the Second Circuit . . . and hold that, absent exigent circumstances, police who have probable cause to arrest a felony suspect must obtain a warrant before entering a dwelling to carry out the arrest.").

Warrantless entry into a residence is not prohibited, however, if the arrest is effected at the doorway because the doorway is considered a public place. *LaLonde v. County of Riverside*, 204 F.3d 947, 955 (9th Cir. 2000). The suspect's appearance at the doorway must be voluntary and consensual, however. *See U. S. v. Johnson*, 626 F.2d 753, 757 (9th Cir. 1980) (doorway exception inapplicable where suspect only opened the door because government agents misrepresented their identities and had their guns drawn). Here, the parties offer conflicting accounts of Mr. Manning's arrest. *Compare* Dkt. 40 at 5 (Trooper Clevenger told Mr. Manning that he was under arrest at the doorway), *with* Dkt. 50 at 9 (Mr. Manning never told he was under arrest). There are genuine issues of material fact as to whether Mr. Manning was formally placed under arrest, and, if so, where the arrest occurred.

As a threshold matter, the plaintiff urges the Court to analyze his Fourth Amendment claims under Washington law. Under Washington law, a police officer may arrest an individual if there is probable cause to believe that a misdemeanor is being committed in his presence, but an officer is not required to have personally witnessed misdemeanors involving physical harm or threats of harm to persons or property. RCW 10.31.100(1). A warrantless arrest for commission of a misdemeanor not

1  in the officer's presence does not violate the Fourth Amendment. *Barry v. Fowler*, 902 F.2d 770,
2  772 (9th Cir. 1990). Rather, the crucial inquiry is whether the arrest was supported by probable
3  cause.

4  **I. Probable Cause**

5  Probable cause exists if the facts and circumstances the officer knew at the time are sufficient
6  to warrant a prudent person, or one of reasonable caution, to believe that, in light of the
7  circumstances, the suspect has committed, is committing, or is about to commit an offense. *U.S. v.*
8  *Greene*, 783 F.2d 1364, 1367 (9th Cir. 1986). In forming probable cause, police officers may rely
9  upon tips from informants.

10  The reliability of an informant's tip to police is assessed under the "totality of the
11  circumstances approach," under which courts assess the veracity and reliability of the informant and
12  basis of the informant's knowledge. *Illinois v. Gates*, 462 U.S. 213, 233 (1983). Tips from crime
13  victims are less suspect if based upon personal knowledge. *See id.* at 233-34 ("[I]f an unquestionably
14  honest citizen comes forward with a report of criminal activity--which if fabricated would subject
15  him to criminal liability--we have found rigorous scrutiny of the basis of his knowledge unnecessary."
16  (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972) ("[W]hen the victim of a street crime seeks
17  immediate police aid and gives a description of his assailant, or when a credible informant warns of a
18  specific impending crime-the subtleties of the hearsay rule should not thwart an appropriate police
19  response."))).

20  Mr. Manning contends that probable cause was lacking because there are no indicia of
21  reliability supporting information provided by the Comptons. Dkt. 49 at 11-12. The Comptons
22  described the truck involved in the incident as a two-tone Chevrolet with a maroon stripe and bearing
23  the license plate "NATIVE1." Dkt. 40 at 3. The Comptons described the suspect as a thin, white
24  male in his mid-forties or fifty, with scruffy facial hair and longer dark and gray hair. *Id.* Trooper
25  Clevenger obtained Mr. Manning's address by utilizing the Department of Licensing database for the
26

license plate "NATIVE1." This information was corroborated by Trooper Clevenger's observation of a man matching the description provided by the Comptons enter Mr. Manning's residence. Dkt. 40 at 3. The plaintiff offers no basis for questioning the reliability of the Comptons or their ability to provide the police with information after observing the incident firsthand. The Court should therefore hold that the plaintiff fails to state a constitutional violation with respect to whether his arrest was supported by probable cause.

### ii. Exigent Circumstances

The presence of exigent circumstances is an exception to the warrant requirement, and the government bears the "heavy burden" of proving exigent circumstances. *U.S. v. Alvarez*, 810 F.2d 879, 881 (9th Cir. 1987). Exigent circumstances are "'those in which a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search [or arrest] until a warrant could be obtained.'" *U.S. v. Gooch*, 6 F.3d 673, 679 (9th Cir. 1993) (brackets in original). Exigent circumstances exist when "a reasonable person [would] believe that entry . . . was necessary to prevent physical harm to the officers or other persons, the destruction of relevant evidence, the escape of the suspect, or some other consequence improperly frustrating legitimate law enforcement efforts." *Id.*

Trooper Clevenger alleges several exigent circumstances. First, Mr. Manning was allegedly uncooperative. Dkt. 36-1 at 21. The basis for this conclusion is apparently Mr. Manning's refusal to explain his whereabouts when the incident occurred until he was informed why he was being investigated and his claim that he did not know where State Route 162 was located. Dkt. 40 at 4.

Second, the crime being investigated involved a firearm. Dkt. 36-1 at 21. Mr. Manning contends that the interior of the residence was viewable to the troopers from the door. Dkt. 49 at 13. Trooper Clevenger alleges that when Mr. Manning came to the door, his left hand was out of view, raising concerns that he may have been armed. Dkt. 40 at 4. According to Trooper Clevenger, however, Mr. Manning was not placed under arrest until he raised his left arm to indicate that he did

not wish to answer any more questions. *Id.* at 4-5. In other words, it should have been clear that Mr. Manning was not holding a weapon when the troopers allegedly arrested him.

Third, the weapon allegedly used in the incident was not accounted for. Dkt. 36-1 at 21. In determining Mr. Manning's address, the troopers learned that Mr. Manning had a concealed pistol permit and a hunting license. Dkt. 40 at 3. The mere presence of a firearm is not an exigent circumstance. *U.S. v. Gooch*, 6 F.3d 673, 680 (9th Cir. 1993). In addition, the troopers arrived at the residence more than four hours after Mr. Manning was allegedly seen with a gun. *See* Dkt. 40 at 2-3.

Fourth, there was considerable distance between the door of the residence and Trooper Clevenger's vehicle and it was dark, subjecting the troopers to potential danger as they returned to their vehicles. Dkt. 36-1 at 21.

Finally, the troopers could not account for other possible suspects. Dkt. 36-1 at 21. Mr. Manning mentioned another adult male during his conversation with the troopers, and the troopers could not account for this person's whereabouts. Dkt. 40 at 5. Also, Ms. Compton had reported seeing a passenger in the truck during the incident. Dkt. 51 at 14.

Taking the facts in the light most favorable to the plaintiff, the only facts suggesting the presence of exigent circumstances are that the alleged crime involved a firearm that was not accounted for, that the residence was located some distance from Trooper Clevenger's vehicle, and that another suspect may have been involved. Mr. Manning was placed under arrest for an incident that occurred more than four hours earlier. While this delay was apparently due to a backlog of calls received by the police department, it undercuts the defendants' contention that Mr. Manning's arrest involved exigent circumstances. Such circumstances may be present in many contexts and do not rise to the level of exigent circumstances justifying a warrantless arrest. The Court should therefore hold that, at least, the plaintiff has successfully raised an issue of fact on whether his arrest was improper because it was not supported by exigent circumstances.

### b. Excessive Force

Excessive force claims arising from an arrest are analyzed under the Fourth Amendment reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). The reasonableness of a defendant's actions depends on factors such as (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* The totality of the circumstances must be considered. *Fikes v. Cleghorn*, 47 F.3d 1011, 1014 (9th Cir. 1995). The officer's conduct must be reasonable. *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994) ("Requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment. . . . Officers thus need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable.").

There are genuine issues of material fact precluding summary judgment on the plaintiff's excessive force claim. Mr. Manning admits that he resisted being handcuffed by bracing himself against the doorjamb. Dkt. 50 at 11. The significance of this fact and facts regarding the indoor chase that followed depends, in part, upon whether Mr. Manning was arrested at the door or inside the residence. This factual issue is disputed. Mr. Manning also contends that Trooper Ducommon beat his head against the floor several times after he was already on the ground. Dkt. 50 at 12. The defendants contend that this claim is not credible because Mr. Manning had been drinking, he told Ms. Long to lie to the police, and he claims to have short term memory loss (Dkt. 54-1 at 5); and because his medical records do not appear to support this claim. *See* Dkt. 37 at 13. These issues of credibility should be resolved by the finder of fact. At this stage of the proceedings, Mr. Manning has successfully raised an issue of fact on whether his arrest violated his right to be free from the use of excessive force.

**2. CONCLUSION**

The plaintiff fails to create a genuine issue of material fact as to his claim of unlawful arrest based on lack of probable cause.

The facts as presented by the plaintiff successfully allege a constitutional violation for a warrantless arrest unsupported by exigent circumstances. Based upon the record presented to the Court thus far, the unlawfulness of the arrest is in issue, and a whether reasonable officer would have believed that exigent circumstances justified a warrantless arrest of Mr. Manning is in issue.

Finally, Mr. Manning has also successfully raised an issue on whether his arrest involved the use of excessive force. The right to be free from excessive force is clearly established, and reasonable officers could conclude that the use of force against Mr. Manning was unlawful.

Based upon the facts viewed in the light most favorable to Mr. Manning, the foregoing discussion shows that plaintiff's constitutional rights may have been violated and that the rights may have been clearly established such that a reasonable police officer would be on notice of the existence and parameters of those rights. The Court should therefore decline to hold, at this point, that the defendants are entitled to qualified immunity. Defendants are not precluded from raising the issue of qualified immunity at trial.

**E. OTHER FEDERAL CLAIMS**

To the extent that Mr. Manning claims that the troopers' use of force was excessive and violated the Fifth, Eighth, and Fourteenth Amendments, such claims are to be analyzed under the Fourth Amendment, which is addressed above. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). To the extent that Mr. Manning asserts that his Sixth Amendment right to counsel was violated, the defendants do not appear to seek summary judgment on such a claim.

**F. NEGLIGENCE**

The defendants move for summary judgment on Mr. Manning's claims that the troopers were negligently trained and supervised. Dkt. 36-1 at 18-19. The plaintiff does not respond to this portion of the motion. Because the plaintiff fails to respond, the motion should be granted in this respect. *See*

1  Local Rule CR 7(b)(2) ("If a party fails to file papers in opposition to a motion,

2  such failure may be considered by the court as an admission that the motion has merit.").

3  **G. MOTION TO STRIKE**

4  The defendants move to strike as inadmissible hearsay portions of Mr. Manning's deposition

5  in which he summarizes other people's statements. *See* Dkt. 50 at 13, Dkt. 53, Exh. A at 15. In so

6  far as Mr. Manning's statements in these excerpts are offered to prove the truth of the matter

7  asserted, they constitute hearsay and should be stricken.

8  The defendants move to strike exhibits attached to the declaration of attorney Robert

9  Hamilton. Exhibit A is a motion submitted to another court in a different matter is irrelevant and

10 therefore should be stricken. Exhibits B and C are copies of WSP "Report of Investigation"

11 documents. *See* Dkt. 51 at 12, 19. The defendants contend that Mr. Hamilton lacks personal

12 knowledge as to the content of these documents. Dkt. 54-1 at 8. While it appears that Mr. Hamilton

13 may lack such knowledge, he has declared under penalty of perjury that the exhibits provided are

14 true and correct copies of the incident reports. Dkt. 51 at 2. The defendants do not appear to dispute

15 whether Mr. Hamilton has personal knowledge to make such a declaration and Mr. Hamilton does

16 not appear to declare that the content of the documents is itself true and accurate. The motion to

17 strike should therefore be granted as to Exhibit A and denied in as to Exhibits B and C.

18                              **III. ORDER**

19       Therefore, it is hereby

20       **ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 36-1) is **GRANTED in**

21 **part** and **DENIED in part** as follows: (1) With respect to the plaintiff's 42 U.S.C. §1983 claims

22 against the Washington State Patrol, the State of Washington, and Troopers Ducommon and

23 Clevenger in their official capacities, the motion is **GRANTED**, and these claims are **DISMISSED**;

24 (2) With respect to the plaintiff's state claims of false arrest, assault, battery, and false imprisonment,

25 the motion is **GRANTED**, and these claims are **DISMISSED**; (3) With respect to the plaintiff's 42

26 U.S.C. §1983 claims against Troopers Ducommon and Clevenger in their personal capacities, the

motion is **DENIED** as provided herein; and (4) with respect to the plaintiff's negligence claims, the motion is **GRANTED**, and these claims are **DISMISSED**. The defendants' Motion to Strike (Dkt. 54-1) is **GRANTED in part** and **DENIED in part** as set forth herein.

The Clerk of the Court is instructed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 1st day of December, 2006.

*/s/ Robert J. Bryan*
Robert J. Bryan
United States District Judge